CLERK'S OFFICE
A TRUE COPY
May 10, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information Associated with directbuycity@gmail.com and mpmediasales@gmail.com that is Stored at Premises Controlled by Google

Case No. 24-M-399 (SCD)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ______ District of ______
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 5-24-24 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. Stephen C. Dries .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ______ .

Date and time issued: 5-10-24. 10:55 am

*Judge's signature*

City and state: Milwaukee, Wisconsin

U.S. Magistrate Judge Stephen C. Dries
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ______________________

______________________________
*Executing officer's signature*

______________________________
*Printed name and title*

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

**MATTER NO. 2023R00461**

This warrant applies to information associated with **directbuycity@gmail.com** and **mpmediasales@gmail.com** (the "Target Accounts"), that is stored at premises owned, maintained, controlled, or operated by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

**ATTACHMENT B**

**Particular Things to be Seized**

**MATTER NO. 2023R00461**

## I. Information to be disclosed by Google LLC ("Google")

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose to the government for each account or identifier listed in Attachment A the following information, within the following dates ranges:

July 17, 2020 to the present for the account **directbuycity@gmail.com**

January 17, 2022 to the present for the account **mpmediasales@gmail.com**

a) All business records and subscriber information, in any form kept, pertaining to the Account, including:

- Names (including subscriber names, user names, and screen names);
- Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);
- Telephone numbers, including SMS recovery and alternate sign-in numbers;
- Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

- Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers
- Length of service (including start date and creation IP) and types of service utilized;
- Means and source of payment (including any credit card or bank account number); and
- Change history.

b) All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c) Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

d) **Gmail**. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails. All forwarding or fetching accounts relating to the accounts.

e) **Contacts**. Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history.

f) **Messaging**. The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history.

g) **Location History**. All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history.

h) **Search History**. All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts,

subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

i) **YouTube**. All records, content, and other information relating to YouTube use and access, including, but not limited to, associated videos (including records of uploads, shares, views, edits, comments, likes, and other interaction; and copies of videos uploaded to, shared by, or shared with the account), searches (including search terms), channels, subscriptions and subscribers, playlists, connected apps, user settings, friends and other contacts (including the content of all communications), deletions and other changes, and, for videos, URL, metadata, privacy and other settings, size, title, description, duration, tags, timestamps, IP addresses, location information, and the account or other identifier of the user who uploaded the video; video and channel performance information, including all analytics on content, reach, engagement, audience, revenue, and research; and, for all of the above, all related logs, IP addresses, timestamps, and device identifiers.

Google is hereby ordered to disclose the above information to the government within **FOURTEEN (14) DAYS** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence and/or instrumentalities of violations of Title 18, United States Code, Sections 2314 and 2315, those violations involving TINDALL, PANSZCZYK, NOWAK, and/or WISNIEWSKA, and occurring after July 17, 2020 (directbuycity@gmail.com) and January 17, 2022 (mpmediasales@gmail.com), including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a. The sale of stolen merchandise, communications between co-conspirators about the theft and resale of retail goods, preparatory steps taken in furtherance of the scheme, steps taken to conceal the scheme, and methods of the scheme.

b. Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

c. Evidence indicating the Account owner's state of mind as it relates to the crimes under investigation;

d. The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

CLERK'S OFFICE
A TRUE COPY
May 10, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information Associated with directbuycity@gmail.com and mpmediasales@gmail.com that is Stored at Premises Controlled by Google

Case No. 24-M-399 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ______________ District of ____________________, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❒ contraband, fruits of crime, or other items illegally possessed;
- ❒ property designed for use, intended for use, or used in committing a crime;
- ❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Sections 2314 and 2315 | Interstate Transportation of Stolen Property and Possession or Receipt of Stolen Property |

The application is based on these facts:

See Affidavit

❒ Continued on the attached sheet.

❒ Delayed notice of _____ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JULIUS KLEVINSKAS Digitally signed by JULIUS KLEVINSKAS Date: 2024.05.07 10:11:52 -05'00'

*Applicant's signature*

DHS-HSI Special Agent Julius Klevinskas

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 5-10-24

*Judge's signature*

City and state: Milwaukee, Wisconsin

U.S. Magistrate Judge Stephen C. Dries

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Julius Klevinskas, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with accounts **directbuycity@gmail.com** and **mpmediasales@gmail.com** (the "Target Accounts"), that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a sworn law enforcement officer currently employed as a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and have been so employed since approximately January 2023. I am currently assigned to the Chicago Field Division – Milwaukee Resident Office (RAC). Since becoming a Special Agent, I have received specialized training in various aspects of law enforcement and my responsibilities include conducting investigations of alleged criminal violations of federal statutes and laws. Prior to my tenure as a HSI Special Agent, I was a Diversion Investigator with the Department of Justice

(DOJ), Drug Enforcement Administration (DEA), Milwaukee District Office, from approximately July 2019 to January 2023.

3. Based on my training and experience, I know that individuals who engage in criminal activity using online accounts often save, store, or possess digital information, data, and evidence within their online accounts. I know that as a regular course of business, many electronic communication service providers maintain said digital information and content for a period of time, and make it available to law enforcement agencies to seek with service of a legal Court Order. I also know that as a regular course of business, electronic communication service providers may maintain internal records that the company may collect from each individual user as set by the agreed upon terms of service at the time of account activation. These internal records may include various subscriber information such as IP address logs, user event time/date stamps, device identification, phone numbers, email addresses, etc.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of the violation of Title 18, United States Code, Sections 2314 (interstate transportation of stolen property) and 2315 (possession or receipt of stolen property), further described below and in Attachment B, will be found in the Target Accounts, further described in Attachment A.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### *Overview*

7. Since approximately 2014, local, state, and federal authorities in the Chicago, Illinois area and elsewhere have been investigating a group of people primarily of Polish descent known as Polish Travelers who are believed to be responsible for organized retail theft crimes across the country. The investigation has revealed that members of the group travel across the country in vehicles registered in fictitious names, targeting brick-and-mortar retailers for theft of concealable high-value items such as small electronics, printer ink, cosmetics, and pet products. The thieves then mail the stolen property back to the Chicagoland area, where they are received by fences. The stolen property is then re-sold on e-commerce platforms. In September of 2019, more than two dozen co-conspirators from this group were indicted in the Northen District of Texas, Case No. 19-CR-451 (N.D. Texas), and were ultimately convicted of conspiracy to commit interstate transportation of stolen property.

8. The investigation has continued into members of the Polish Travelers who remain active in organized retail theft. While investigating the pattern of life and method of business operations of some such members, investigators identified SEBASTIAN NOWAK ("NOWAK") and ROZALIA WISNIEWSKA ("WISNIEWSKA") as Polish Travelers based in Niles, Illinois with likely involvement in organized retail theft.

9. As described further below, NOWAK and WISNIEWSKA travel from Illinois to locations across the country to steal products from retail stores. They then package and ship the stolen products, typically through UPS Store locations, to co-conspirators JEFFREY TINDALL ("TINDALL") and MATEUSZ PANSZCZYK ("PANSZCZYK") in northern Illinois. The stolen products are then typically transported to a home in southeastern Wisconsin for temporary storage and are then sold online via e-commerce platforms such as eBay and Amazon through accounts held by TINDALL and PANSZCZYK.

10. I know from my training and experience that there is a large amount of money associated with organized retail theft and the subsequent sale of stolen products. Based on this investigation and information provided by Arlington Heights, Illinois Police Department (AHPD) detective Ryan Pacyga, I believe TINDALL and PANSZCZYK are knowingly procuring stolen goods from NOWAK and WISNIEWSKA and then selling the stolen goods online for profit.

*Examples of NOWAK's and WISNIEWSKA's Retail Thefts*

11. **Dunwoody, Georgia.** Investigation by AHPD Det. Pacyga revealed that on or about November 9, 2015, NOWAK and WISNIEWSKA were arrested at Walmart located at 4725 Ashford Dunwoody Road in Dunwoody, GA. Per the Dunwoody Police Department report, a Walmart loss prevention officer observed NOWAK obtain multiple computer hard drives and Texas Instrument Calculators. NOWAK and WISNIEWSKA then moved to the shoe department, at which time WISNIEWSKA placed the items into her pants underneath her coat. NOWAK and WISNIEWSKA then proceeded past the last point of sale, at which time they were detained. The total loss was estimated at $1,139.00 USD. NOWAK and WISNIEWSKA were both charged with Felony Shoplifting.

12. **Allen, Texas.** Further investigation by AHPD Det. Pacyga revealed that on or about

March 22, 2019, NOWAK and WISNIEWSKA were arrested at the Antique Mall of Allen located at 104 N. Greenville Avenue in Allen, TX. Per the complainant, NOWAK and WISNIEWSKA were attempting to access a locked display case holding purses. The reporting officer reviewed surveillance video and observed NOWAK and WISNIEWSKA approach a locked display case. WISNIEWSKA retrieved keys from her pocket and handed them to NOWAK. NOWAK attempted to enter the display utilizing the keys without success. A search of WISNIEWSKA resulted in the recovery of three (3) keys typically used to access retail display cases, an anti-theft jamming device, heavy duty magnets utilized for removing security devices, and a homemade shim utilized to defeat simple case locks. Both NOWAK and WISNIEWSKA were charged with Attempted Theft. WISNIEWSKA was also charged with Possession of Criminal Instruments.

13. **Algonquin, Illinois**. In early September 2023, AHPD Det. Pacyga established surveillance at the apartment occupied by NOWAK and WISNIEWSKA in Niles, IL, and observed NOWAK and WISNIEWSKA exit the apartment and enter a vehicle (hereinafter, "NOWAK's vehicle"). The detective then conducted an inquiry through FLOCK, a nation-wide license plate recognition (LPR) service. This inquiry revealed the vehicle was in the area of South Elgin, IL, on or about September 2, 2023, in close proximity to a Dick's Sporting Goods store (DSG) in Geneva, IL. AHPD Det. Pacyga contacted DSG's district loss prevention officer, who reviewed surveillance footage and determined that persons appearing to be NOWAK and WISNIEWSKA entered the DSG store on or about September 2, 2023. A police report was then filed with the AHPD, indicating that NOWAK and WISNIEWSKA entered the store (1816 S. Randall Road, Algonquin, IL) at approximately 12:20PM and took a direct route to the area containing pickleball paddles and equipment. WISNIEWSKA was observed leaning into a shelving unit containing paddles, making small, shifty movements with her body. NOWAK and WISNIEWSKA then

exited the store at approximately 12:23PM without making a purchase. A subsequent inventory check revealed four (4) Ben Johns Persus Pickleball Paddles had been stolen, with a value totaling approximately $1,000.00 USD.

*Direct Buy City*

14. On or about August 22, 2023, AHPD Det. Pacyga established surveillance on the apartment occupied by NOWAK and WISNIEWSKA located in Niles, IL. At approximately 11:40AM, AHPD Det. Pacyga observed an unknown male subject and unknown female subject enter a vehicle. The vehicle then traveled to the UPS Store located at 310 Busse Highway in Park Ridge, IL. At approximately 11:50AM, the male subject exited the vehicle and retrieved a large carboard box from the interior of the vehicle. The male subject then brought the box inside the UPS Store. At approximately 11:54AM, the male subject exited the UPS Store, re-entered the vehicle, and exited the area.

15. AHPD Det. Pacyga entered the UPS Store and learned the package was shipped by Adam Codd (TX: 630-661-8585) to TINDALL, Direct Buy City LLC, 2189 N. IL Route 83, Round Lake, IL 60073. Adam Codd was determined to be a non-existent person. Further investigation revealed Direct Buy City LLC was an active Illinois entity originally registered through the Illinois Secretary of State (FILE # 08960895) on 7/17/2020. Per the Illinois Secretary of State, TINDALL was the listed business manager, with a listed business address of 502 Poplar Avenue in Antioch, IL. An open-source internet inquiry revealed Direct Buy City had an active website (www.directbuycity.com), which sold various beauty products such as Clarins face creams, facial cleansing devices, and pickleball paddles. The email address **directbuycity@gmail.com** was (and remains) listed as the contact email under the Terms of Service page of the website.

16. Direct Buy City also had an active eBay seller profile (seller name:

DirectBuyCity_1), which listed various products for sale, including: flea and tick medications, beauty supplies, pickleball paddles, colognes, perfumes, and printer ink. It should be noted these are all products commonly targeted by Polish Travelers during the commission of retail thefts. At the time of this Affidavit, the public eBay page associated with DirectBuyCity_1 (https://www.ebay.com/str/directbuycity1) appeared to show "23k" (i.e., 23,000) items sold, with account creation ("member since") listed as September 15, 2017.

17. On or about August 24, 2023, AHPD Det. Pacyga received records from eBay related to seller profile "directbuycity_1." The documentation from eBay revealed the following information: Company Name: DirectBuyCity LLC, eBay User ID: directbuycity_1, Full Name: Jeffrey L Tindall Jr., Shipping Address: Matt Panszczyk, 21225 116th Street, Bristol, WI 53104 (hereinafter, "PANSZCYK's residence"), and email address "**directbuycity@gmail.com.**"

*Tracking NOWAK's Vehicle*

18. On or about September 11, 2023, Judge Jill C. Marisie of the Circuit Court of Cook County, IL authorized a tracking order for NOWAK's vehicle. A tracking device was subsequently placed on NOWAK's vehicle on or about September 12, 2023.

19. On or about September 15, 2023, the vehicle, driven by NOWAK, traveled to Starbucks Coffee located at 7410 118th Avenue in Kenosha, WI. Surveilling detectives saw NOWAK exit the vehicle and meet with TINDALL in the middle of the parking lot. NOWAK and TINDALL shook hands and hugged, after which time both entered the vehicle; NOWAK was seated in the front driver's seat, TINDALL was seated in the front passenger's seat. While seated inside the vehicle, it appeared TINDALL handed NOWAK a white colored envelope. TINDALL then exited the vehicle and walked northbound through the parking lot. At approximately 1:22PM, NOWAK's vehicle exited the area southbound on I-294.

20. Between approximately September 16, 2023 and September 26, 2023, AHPD Det. Pacyga monitored the vehicle via a mobile tracking application as it traveled to Indiana, Tennessee, Georgia, New York and New Jersey. According to AHPD Det. Pacyga, during this period of time, NOWAK and WISNIEWSKA committed retail thefts at the following retail establishments: (14) confirmed thefts at Ulta stores totaling a loss of approximately $15,000.00 USD; three (3) confirmed thefts at Best Buy totaling approximately $2,477.78 USD; ten (10) thefts at Dick's Sporting Goods (loss amount unknown); and three (3) confirmed thefts at REI totaling approximately $2,500.00 USD. During this period of time, NOWAK and WISNIEWSKA also sent approximately five (5) packages via UPS to TINDALL's UPS mailbox located in Round Lake Beach, IL.

21. On or about October 26, 2023, a tracking order extension was granted for NOWAK's vehicle through the Cook County Circuit Court. Upon approval, a tracking device was attached to NOWAK's vehicle on or about October 27, 2023.

22. According to AHPD Det. Pacyga, between approximately November 3, 2023, and November 24, 2023, NOWAK and WISNIEWSKA committed over twenty (20) additional retail thefts from various retailers in Illinois, Indiana, Missouri, Mississippi and Georgia, with the total loss amount exceeding $30,000.00 USD. During that same period of time, NOWAK and WISNIEWSKA completed at least four (4) shipments to TINDALL's UPS mailbox in Round Lake Beach, IL.

*UPS Package Intercept*

23. In reviewing tracking data, AHPD Det. Pacyga noted that on or about September 20, 2023, NOWAK's vehicle visited The UPS Store (Store #4261) located at 2566 Shallowford Road NE, Suite 104, Atlanta, GA. Per the tracking data, the vehicle was present at the location

from approximately 2:24PM until 2:38PM. AHPD Det. Pacyga contacted a representative from The UPS Store and advised them of this investigation. The representative subsequently provided a "UPS Shipment Details" form, which indicated a package (UPS tracking # 1Z1387R70308122616) was shipped on or about September 20, 2023, to TINDALL's UPS mailbox in Round Lake Beach, IL.

24. In anticipation of the package's arrival to Illinois, on or about September 21, 2023, AHPD Det. Pacyga obtained approval for a package search warrant through Cook County, IL. On or about September 22, 2023, at approximately 7:40AM, AHPD Det. Pacyga executed the warrant upon the package's arrival to the UPS facility in Palatine, IL. The detective removed and photographed the package's contents. The approximate total value of the products contained in the package was $8,314.70 USD. AHPD Det. Pacyga noted the items observed inside the package are consistent with the products being sold by TINDALL through his eBay seller profile "DirectBuyCity_1." Along with suspected stolen product, the package included a hand-written receipt that detailed item names with an accompanying number next to each name. In reviewing the contents of the package, the receipt was consistent with the number or products within the package.

25. The package was then re-packaged with the items and the box was re-sealed. After being resealed, the package was subsequently delivered to Round Lake Beach, IL, without incident.

*UPS Shipments and TINDALL Surveillance*

26. In reviewing tracking data related to the travels of NOWAK and WISNIEWSKA, AHPD detective learned NOWAK and WISNIEWKA completed two (2) shipments to TINDALL on or about November 10, 2023, and November 11, 2023, respectively. In anticipation of

TINDALL receiving the packages sent by NOWAK and WISNIEWSKA, on or about November 13, 2023, surveillance was established at the UPS Store in Round Lake Beach, IL by AHPD Det. Pacyga. At approximately 5:30PM, TINDALL arrived at the UPS Store driving his 1998 white Honda Accord bearing Illinois registration EC79557. TINDALL parked in front of the store and exited the vehicle. At approximately 5:33PM, TINDALL entered the store with four (4) cardboard boxes. At approximately 5:36PM, TINDALL exited the store carrying two (2) large boxes, which were loaded into the Honda. TINDALL then re-entered the store. At approximately 5:37PM, TINDALL exited the store carrying one (1) large box, which was also loaded into the Honda. AHPD detective noted all three (3) of the boxes that TINDALL took from the store to his car were consistent in general appearance with the boxes previously sent by NOWAK and WISNIEWSKA.

27. According to AHPD Det. Pacyga, at approximately 5:41PM, TINDALL traveled to the United States Postal Service (USPS) Post Office located at 1940 Municipal Way, Round Lake, IL. At this time, TINDALL exited the Honda and retrieved two (2) large, clear plastic garbage bags each containing multiple, smaller packages inside of them. TINDALL then entered the Post Office. At approximately 5:45PM, TINDALL exited the Post Office without the aforementioned bags. TINDALL re-entered the Honda and traveled to PANSZCZYK's residence, located at 21225 116th Street, Bristol, WI, where he arrived at approximately 6:05PM.

*Trash Pull at PANSZCZYK's Residence*

28. On or about February 8, 2024, a trash pull was conducted at 21225 116th Street, Bristol, WI, PANSZCZYK's residence. Three (3) weighted, medium size white colored plastic bags were recovered, along with numerous cardboard boxes. Of note, multiple empty boxes/packages addressed to PANSZCZYK and/or MP Media Sales at the Bristol, WI address were recovered. Multiple empty boxes/packages addressed to Jeffrey TINDALL and/or

DirectBuyCity at 2189 N. Rt. 83, Number 262, Round Lake, IL 60073 (UPS Store) were also recovered. Approximately seven (7) of the packages/boxes addressed to TINDALL/DirectBuyCity had an additional sticker affixed to them, which indicated the package/box was received via UPS with the number "262" printed on it. "262" is the mailbox number associated to TINDALL at the aforementioned UPS Store. Multiple Amazon.com/eBay return slips addressed to PANSZCZYK, TINDALL, and MP Media Sales were also recovered.

29. Multiple items related to the packaging/shipping of products were recovered, including used rolls of tape, empty bags of bubble mailer envelopes, and a used bottle of the product "Goo Gone"—a product commonly used to remove retail stickers and other similar items affixed to retail products. Also recovered was an anti-theft security tag commonly affixed to various retail products.

*MP Media Sales LLC*

30. A search of the Wisconsin Department of Financial Institutions (DFI) website shows that MP Media Sales LLC is a Wisconsin Domestic Limited Liability Company, registered on or about January 17, 2022. The Articles of Organization associated with MP Media Sales LLC show that Mateusz PANSZCZYK was listed as the only member of the business.

31. An open-source internet inquiry revealed MP Media Sales LLC has an active website (www.mpmediasales.com), which sells various flea and tick medications. The email address **mpmediasales@gmail.com** and address 21225 116th St, Bristol, WI 53104 (PANSZCZYK's residence), are listed under the Refund Policy page of the website (https://mpmediasales.com/pages/re).

32. An open-source internet inquiry also revealed MP Media Sales LLC has an active Amazon account under the name "MP Media Sales LLC" with an address listed as 21225 116th

St., Bristol, WI 53104 (PANSZCZYK's residence), which has various items listed for sale, some of which include pickleball paddles and Texas Instrument Calculators.

33. An open-source internet inquiry also revealed a YouTube channel titled MP Media Sales LLC, with handle @mpmediasalesllc, that includes several short videos of a person unboxing packages from Amazon. The person depicted on the channel's homepage and in the videos is similar in appearance to booking photographs of PANSZCZYK.

**BACKGROUND CONCERNING GOOGLE**

34. Google is a United States Company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome and a free search engine called Google Search.

35. In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device.

36. Signing up for a Google Account automatically generates an email address at the domain "gmail.com." That email address will be the log-in username for access to the Google Account. Enterprises may also establish Google Accounts which can be accessed using an email address at the enterprise's domain (e.g., employee[@]company.com).

37. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered

to the general public, some of which are described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

38. **GMAIL:** Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

39. **CONTACTS:** Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their mobile phone or device address book, so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them.

40. **CALENDAR:** Google provides an appointment book for Google Accounts through Google Calendar. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their mobile phone or device address book,

so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them.

41. **GOOGLE KEEP:** Google also provides online to-do lists and notepads for Google Accounts. Google Keep allows users to create notes or lists. These notes can be shared with other users to edit. Users can set notifications at particular dates and times for both tasks and notes. Google preserves tasks and notes indefinitely, unless the user deletes them.

42. **WEB-BASED CHATS and MOBILE MESSAGING:** Google provides a number of direct messaging services accessible through a browser or mobile application, including Duo, Messages, Hangouts (Chat and Meet), and the now-retired Allo and Chat. These services enable real-time communications. Users can send and receive text messages, videos, photos, locations, links, and contacts from their Google Account using these services. Chat and Hangouts require or required the other user to also have a Google Account. Duo, Messages, and Allo do or did not. Google preserves messages sent through these services indefinitely, unless the user turns off the setting to save conversation history or deletes the message.

43. **GOOGLE DRIVE:** Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can also set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to

share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them.

44. **GOOGLE DRIVE FOR ANDROID USERS:** Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, and file downloads. If a user subscribers to Google's cloud storage service, Google One, they can opt to back up all the data from their device to Google Drive.

45. **GOOGLE PHOTOS:** Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

46. **GOOGLE MAPS and GOOGLE TRIPS:** Google offers a map service called Google Maps that can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations

to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

47. **GOOGLE PLAY:** Google Accounts can buy electronic media, like books, movies, and music, and mobile applications from the Google Play Store. Google Play records can include records of whether a particular application has been or is currently installed on a device. Users cannot delete records of Google Play transactions without deleting their entire Google Account.

48. **GOOGLE VOICE:** Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

49. **GOOGLE CHROME:** Google offers a free web browser service called Google Chrome that facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account.

50. **YOUTUBE:** Google also offers a video platform called YouTube that offers Google Accounts the ability to upload videos and share them with others. Users can create a YouTube channel where they can upload videos, leave comments, and create playlists available to the public. Users can subscribe to the YouTube channels of others, search for videos, save favorite videos, like videos, share videos with others, and save videos to watch later. More than one user can share control of a YouTube channel. YouTube may keep track of a user's searches, watch history, likes, comments, and change history to posted videos.

51. **INTEGRATION OF GOOGLE SERVICES:** Google integrates these various services to make it easier for Google Accounts to access the full Google suite of services. Users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

**Google Account Records:**

52. **SUBSCRIBER RECORDS:** When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

53. **ACCESS RECORDS:** Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to

register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

54. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

55. **BROWSING, SEARCH, and APPLICATION USE HISTORY:** Google collects and retains data about searches that users conduct within their own Google Account or using the Google Search service, including voice queries made to Google Assistant. Google also has the capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google also collects and retains data about the voice queries made to its artificial intelligence-powered virtual assistant, Google Assistant, on Android devices and associated it with the registered Google Account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google usually maintains these records indefinitely, unless the user deletes them.

56. **LOCATION HISTORY:** Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices, regardless of service usage. This location data can derive from a range

of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Google maintains these records indefinitely unless the user deletes it or [not yet implemented: opts into automatic deletion of their location history every three or eighteen months].

57. **ANDROID DEVICE DATA:** When an individual uses an Android device for the first time, they are prompted to register the device to a new or existing Google Account. Data about the use of the Android device is saved to the registered Google Account, including device characteristics such as the device serial number, model type/number, and international mobile equipment identity (IMEI). In addition, users may opt-in to Android device backups to Google cloud servers. Android device backups are only saved as a unique backup file if the user subscribes to Google's cloud storage service, Google One. If they do not, data from the device is associated with the registered Google Account and stored with similar data in the Google Account. For example, photos and videos on the device are backed up to Google Photos; contacts are backed up to Google Contacts; events and appointments are backed up to Google Calendar; and files and certain application data are backed up to Google Drive. Google maintains these records

indefinitely, though users may delete Android back-up files in the same manner as any other file associated with the relevant Google service.

58. Google also maintains records of the device characteristics of iPhones used to access Google services, including the make and model of the device. Depending on user settings, those records may be associated with the Google Account logged into the service in use on the device. Google maintains these records indefinitely, unless the user deletes them.

59. In my training and experience, evidence of who was using a Google Account, and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, where, when, why, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. This can be true even if subscribers insert false information to conceal their identity; this information often nevertheless provides clues to their identity, location or illicit activities.

60. For example, the stored communications and files connected to a Google account may provide direct evidence of the offenses under investigation. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

61. In addition, the user's account activity, logs, stored electronic communications, location history, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing,

such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

62. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

63. Other information connected to a Google Account may lead to the discovery of additional evidence. For example, the identification of apps downloaded from the Google Play Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, location information, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

64. As noted herein, TINDALL's and PANSZCZYK's businesses, which sell the kinds of items that NOWAK and WISNIEWSKA steal from retail stores and ship to TINDALL, actively encourage buyers of their products to contact them at the Target Accounts. At a minimum, therefore, the Target Accounts are likely to contain information regarding sales of suspected stolen goods, including information about the terms of sales and inquiries about refunds. This information is likely to lead to additional evidence about the volume of the businesses' sales of stolen goods,

the locations of their customers, the kinds of goods sold, and problems reported by customers. In my training and experience, such information may constitute evidence of the crimes under investigation, including information that can be used to identify the account's user or users.

## CONCLUSION

65. Based on the forgoing, I request that the Court issue the proposed search warrant.

66. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**ATTACHMENT A**

**Property to Be Searched**

**MATTER NO. 2023R00461**

This warrant applies to information associated with **directbuycity@gmail.com** and **mpmediasales@gmail.com** (the "Target Accounts"), that is stored at premises owned, maintained, controlled, or operated by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

**ATTACHMENT B**

**Particular Things to be Seized**

**MATTER NO. 2023R00461**

## I. Information to be disclosed by Google LLC ("Google")

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose to the government for each account or identifier listed in Attachment A the following information, within the following dates ranges:

July 17, 2020 to the present for the account **directbuycity@gmail.com**

January 17, 2022 to the present for the account **mpmediasales@gmail.com**

a) All business records and subscriber information, in any form kept, pertaining to the Account, including:

- Names (including subscriber names, user names, and screen names);
- Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);
- Telephone numbers, including SMS recovery and alternate sign-in numbers;
- Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

- Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers
- Length of service (including start date and creation IP) and types of service utilized;
- Means and source of payment (including any credit card or bank account number); and
- Change history.

b) All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c) Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

d) **Gmail**. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails. All forwarding or fetching accounts relating to the accounts.

e) **Contacts**. Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history.

f) **Messaging**. The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history.

g) **Location History**. All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history.

h) **Search History**. All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts,

subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

i) **YouTube**. All records, content, and other information relating to YouTube use and access, including, but not limited to, associated videos (including records of uploads, shares, views, edits, comments, likes, and other interaction; and copies of videos uploaded to, shared by, or shared with the account), searches (including search terms), channels, subscriptions and subscribers, playlists, connected apps, user settings, friends and other contacts (including the content of all communications), deletions and other changes, and, for videos, URL, metadata, privacy and other settings, size, title, description, duration, tags, timestamps, IP addresses, location information, and the account or other identifier of the user who uploaded the video; video and channel performance information, including all analytics on content, reach, engagement, audience, revenue, and research; and, for all of the above, all related logs, IP addresses, timestamps, and device identifiers.

Google is hereby ordered to disclose the above information to the government within **FOURTEEN (14) DAYS** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence and/or instrumentalities of violations of Title 18, United States Code, Sections 2314 and 2315, those violations involving TINDALL, PANSZCZYK, NOWAK, and/or WISNIEWSKA, and occurring after July 17, 2020 (directbuycity@gmail.com) and January 17, 2022 (mpmediasales@gmail.com), including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a. The sale of stolen merchandise, communications between co-conspirators about the theft and resale of retail goods, preparatory steps taken in furtherance of the scheme, steps taken to conceal the scheme, and methods of the scheme.

b. Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

c. Evidence indicating the Account owner's state of mind as it relates to the crimes under investigation;

d. The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).